UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JASON MARTIN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) CASE NO. ) ) |
| | ) JURY TRIAL REQUESTED |
| v. | ) ) |
| MEDICREDIT, INC., a Missouri corporation; HCA HEALTH SERVICES OF NEW HAMPSHIRE, INC. d/b/a "Portsmouth Regional Hospital"; and WENTWORTH-DOUGLASS HOSPITAL, a New Hampshire non-profit corporation, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**CLASS ACTION COMPLAINT**

1. This is an action for damages arising under 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA"). The TCPA prohibits, among other things, the use of an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to call a telephone number assigned to a cellular telephone service without the prior express consent of the called party. Defendant Medicredit, Inc., in contravention of the aforementioned Act, has imparted concrete and particularized injury upon Plaintiff by placing dozens of such calls to him during the time frame relevant to this action.

2. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v.*

1

*Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. § 1331. The TCPA is a federal statute. Venue here is proper under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to Plaintiff's action occurred here, and Defendant Medicredit has its principal place of business in this judicial district.

## PARTIES

4. Plaintiff Jason Martin ("Plaintiff") is a natural person who, at all times relevant to this action, was a resident of Dover, New Hampshire.

5. Since approximately December 1, 2013, Plaintiff has been the holder, with complete dominion and control, of a cellular telephone assigned the number ending in "8288."

6. Plaintiff is, and at all times mentioned herein was a "person" as defined by 47 U.S.C. §153(39).

7. Defendant Medicredit, Inc. ("Medicredit") is a Missouri corporation with principal offices located in St. Louis, MO and whose registered agent for service of process in the State of Missouri is STK Registered Agent, Inc., 900 W. 48th St., Ste. 900, Kansas City, MO 64112.

8. Upon information and belief, Medicredit is in a business the primary purpose of which is to collect medical debt on behalf of hospitals, private physician practices, and hospital-based physician practices.

9. Defendant HCA Health Services of New Hampshire, Inc. d/b/a "Portsmouth Regional Hospital ("Portsmouth Regional") is a corporation domiciled in New Hampshire whose principal office is located at One Park Plaza, Nashville, TN 37203 and whose address for service of process in the State of New Hampshire is CT Corporation System, 9 Capitol Street, Concord, NH 03301.

10. On information and belief, it is Portsmouth Regional's policy and practice to assign some or all of its delinquent accounts to Medicredit and/or The Outsource Group for collection.

11. Defendant Wentworth-Douglass Hospital ("Wentworth") is a New Hampshire non-profit corporation whose principal place of business is located at 789 Central Ave., Dover, NH 03820 and whose address for service of process in the State of New Hampshire is also 789 Central Ave., Dover, NH 03820.

12. On information and belief, it is Wentworth's policy and practice to assign some of all of its delinquent accounts to Medicredit for collection.

13. Defendants are and at all times mentioned herein were a "person" as defined by 47 U.S.C. §153(39).

**THE TELEPHONE CONSUMER PROTECTION
ACT OF 1991 (TCPA), 47 U.S.C. § 227**

14. In 1991, Congress enacted the TCPA, 47 U.S.C. § 227, et seq., in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of prerecorded messages. 47 U.S.C. §227(a)(1). Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of

3

prerecorded or artificial voice to a wireless number in the absence of an emergency or the prior express consent of the called party.

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. See FCC, Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, FCC 03-153, 68 Fed. Reg. 44144, 44165 (July 25, 2003) ("2003 FCC Ruling"). The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Id.

17. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C. Rcd. 559 ¶1 (Jan. 4, 2008) ("2008 FCC Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at ¶9-10.

18. In the same Declaratory Ruling, the FCC emphasized that both the creditor and the third party debt collector may be held liable under the TCPA for debt collection calls. Id. at ¶10 & n.38. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls

placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call….A third party collector may also be liable for a violation of the Commission's rules.")

19. The FCC also held "[c]onsumers may revoke consent in any manner that clearly expresses a desire not to receive further messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15-72, 2015 FCC LEXIS 1586, ¶ 63, 30 FCC Rcd 7961, 2015 FCC LEXIS 1586, 62 Comm. Reg. (P & F) 1539 (F.C.C. July 10, 2015) ("FCC 2015 Order").

## FACTUAL ALLEGATIONS

20. On or about January 28, 2016, Plaintiff began receiving telephone calls to his cellphone from Medicredit regarding debts allegedly owed to Wentworth and Portsmouth Regional by someone other than himself. At no time leading up to these calls had Plaintiff provided either Defendant with his cellphone number or otherwise given either Defendant his consent to call it.

21. Upon answering the calls, Plaintiff was met with the various pauses, clicks, automated prompts, and so-called "dead air" that form the hallmarks of automatic telephone dialer use..

22. On several other occasions, Medicredit left the following pre-recorded voice message on Plaintiff's cellular telephone:

"Hello, we are calling from Medicredit on behalf of Portsmouth Regional Hospital. This is a call from a debt collector. Please return our call at 800-823-2318, Monday through Friday during normal business hours. Thank You."

23. On several other occasions, Medicredit's automated prompts would play into Plaintiff's cell phone voice mail, indicating that even if Plaintiff were to answer the calls he would be greeted by an automated and pre-recorded voice system:

"Para recibir este mensaje en Español, oprima el 2. If you are "Shannon Dian" press the number 1 on your telephone to receive the message. If that person is home, and you can request for them to come to the phone, press 2. If they are not home and unavailable to receive this message, press 3. If I have the wrong number, press 4. To repeat these choices, press the Star key. Please have "Shannon Dian" come to phone and press 1 to receive an important message regarding personal business. I will wait up to 45 seconds."

24. On several occasions, upon answering Medicredit's telephone calls, Plaintiff waited on hold until a live agent of Medicredit picked up, at which time he would inform the agent to stop calling him. Despite Plaintiff's requests, Medicredit continued to call him.

25. Upon information and belief, Medicredit obtained Plaintiff's number from Wentworth or Portsmouth Regional, or through a third-party electronic database during a skip-tracing process.

26. By effectuating these unlawful phone calls, Medicredit has caused Plaintiff the very harm that Congress sought to prevent - a "nuisance and invasion of privacy."

27. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

28. Defendant's phone calls harmed Plaintiff by wasting his time.

29. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

30. Medicredit's unlawful acts, as described above, were committed knowingly and willfully in light of the fact that Medicredit has been sued on numerous prior occasions for the very same conduct.

31. In addition, both Portsmouth Regional and Wentworth knew or should have known Medicredit's history as a serial TCPA violator. In fact, Medicredit has been sued previously for violations of the TCPA and recently settled a class action. *See Prater v. Medicredit, Inc. et al.,* No. 4:14-cv-00159-ERW (E.D. Mo. Filed Jan. 28, 2014) and Doc 89 (Final Approval Granted 12/07/15).

32. Despite this knowledge, Portsmouth Regional and Wentworth continue to use Medicredit's services and, in doing so, continues to accept and retain the pecuniary benefits derived from Medicredit's unlawful activities.

33. In addition to being strictly liable for Medicredit's violations of the TCPA pursuant to the FCC 2008 Order, Portsmouth Regional's and Wentworth's ratification of

7

Medicredit's continued and habitual TCPA violations subject both Portsmouth Regional and Wentworth to vicarious liability under common law agency principles. See Restatement (Third) of Agency § 4.01(1) (2006) ("Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.").

## CLASS ALLEGATIONS

34. Plaintiff also brings this action on behalf of several classes of other similarly situated individuals, seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Medicredit in negligently, knowingly, or willfully contacting them on their cellular telephones in violation of the TCPA.

35. Accordingly, the proposed class is defined as follows:

> All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing system or artificial or prerecorded voice (6) where such person's number was obtained from a source other than the person himself.

36. The proposed Revocation is defined as follows:

> All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing system or artificial or prerecorded voice (6) after such person informed Medicredit to stop calling.

37. The proposed Wentworth sub-class is defined as follows:

> All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone

8

      dialing system or artificial or prerecorded voice (6) in an attempt to collect a debt owed or allegedly owed to Wentworth (7) where such person's number was obtained from a source other than the person himself or after such person informed Medicredit to stop calling.

38.     The proposed Portland Regional class is defined as follows:

      All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing system or artificial or prerecorded voice (6) in an attempt to collect a debt owed or allegedly owed to Portsmouth Regional (7) where such person's phone number was obtained from a source other than the person himself or after such person informed Medicredit to stop calling.

39.     Plaintiff represents, and is a member of the Classes, having himself been called by Medicredit on his cellular telephone through the use of an automatic telephone dialing system or artificial or prerecorded voice without his prior express consent.

40.     Defendants and their employees and agents are excluded from the Classes.

41.     Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

42.     The Classes is so numerous that the individual joinder of all its members is impractical. While the exact number and identities of the Class members are known only to Defendant at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes that the Classes include thousands of members. Plaintiff alleges that the Class members may only be ascertained through the records maintained by Defendants.

43. Common questions of fact and law exist as to all members of the Classes which predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class members, include, but are not limited to, the following:

    a. Whether, within the class period , Medicredit made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

    b. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation;

    c. Whether Portsmouth Regional and/or Wentworth is vicariously liable for the class placed on its behalf; and

    d. Whether Medicredit should be enjoined from engaging in such conduct in the future.

44. As a person who received calls from Medicredit using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent, Plaintiff is asserting claims that are typical of the Classes.

45. Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained attorneys experienced in the prosecution of class actions.

46. A class action is superior to other available methods of fair and efficient adjudication of the controversy, since individual litigation of the claims of all Class members is impracticable.  Even if every Class member could afford individual litigation, it would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

47. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the this Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

48. Defendants have acted or refused to act in respects generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**

49. Plaintiff re-alleges and incorporates the foregoing allegations as if set forth fully herein.

50. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

51. Medicredit caused equipment having the capacity to dial numbers without human intervention to be used to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

52. Medicredit's calls also utilized an artificial and/or prerecorded voice.

53. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls or after any consent was revoked.

54. As such, the calls at issue were willful or, at a minimum, negligent.

55. Defendants have, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by causing an automatic telephone dialing system and/or artificial or prerecorded voice to be used to make non-emergency telephone calls to Plaintiff and the other members of the Class without their prior express consent.

56. Wentworth is strictly liable for Medicredit's violations for the calls placed on Wentworth's behalf.

57. Portsmouth Regional is strictly liable for Medicredit's violations for the calls placed on Portsmouth Regional's behalf.

58. As a result of Defendants' conduct and pursuant to Section 227(b)(3)(B) of the TCPA, Plaintiff and the other members of the putative Class are each entitled to a minimum of

$500.00 in damages for each violation and if willfulness is proven up to $1,500 for each violation.

59.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

WHEREFORE, Plaintiff Jason Martin, on behalf of himself and the other members of the Class, respectfully request the following relief against Defendant:

1. A declaration that Defendants practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

2. An injunction requiring Defendants not to call any third parties or numbers that were skip traced to insure that Plaintiff is not called now or when Plaintiff obtains additional telephone numbers in the future;

3. An injunction requiring Defendants to file quarterly reports of third party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to insure that Plaintiff is not called in the future;

4. An injunction requiring Defendants not to call any third parties or numbers that were skip traced to insure that class members are not called if they obtain additional telephone numbers in the future;

5. An injunction requiring Defendants to file quarterly reports of third party audits with the Court on its system and procedures not to call any third parties or numbers that were skip traced to insure that class members are not called in the future;

6. An award of actual damages in an amount to be proven at trial;

7. An award of statutory damages for Plaintiff and each Class member in the amount of $500.00 for each and every call that violated the TCPA;

8. An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class member for each and every call that violated the TCPA;

9. An order certifying this action to be a proper class action pursuant to the Federal Rules of Civil Procedure 23, establishing the appropriate Classes and any Sub-classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

10. Attorney's fees, litigation expenses and costs of suit; and

11. Such further and other relief the Court deems reasonable and just.

## JURY TRIAL REQUEST

Plaintiff requests a trial by jury on all issues so triable.

Dated: July 13, 2016.                            Respectfully submitted,


By:  /s/ Timothy J. Sostrin
Timothy Sostrin, Ill. Bar No. 6290807IL
Keith J. Keogh (Pro Hac Vice to be filed)
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, Illinois   60603
312.726.1092 (office)
312.726.1093 (fax)
tsostrin@keoghlaw.com
Keith@KeoghLaw.com

Scott D. Owens, Esq. (Pro Hac Vice to be filed)
Florida Bar No. 0597651

14

                                                SCOTT D. OWENS, P.A.
                                                3800 S. Ocean Dr., Ste. 235
                                                Hollywood, FL 33019
                                                Telephone: (954) 589-0588
                                                Facsimile: (954) 337-0666
                                                scott@scottdowens.com