UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JASON MARTIN, individually and on behalf of all others similarly situated, | ) ) ) |  |
|---|---|---|
| Plaintiffs, | ) ) |  |
| vs. | ) ) | Case No. 4:16CV01138 ERW |
| MEDICREDIT, INC., et al., | ) ) |  |
| Defendants. | ) |  |

**MEMORANDUM AND ORDER**

Before the Court is the Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) by Defendant HCA Health Services of New Hampshire, Inc., d/b/a/ Portsmouth Regional Hospital ("Portsmouth") [ECF No. 22]. Also before the Court is Defendants Medicredit Inc. and Portsmouth's Motion to Stay These Proceedings [ECF No. 24].

I. **FACTUAL AND PROCEDURAL BACKGROUND**

On July 13, 2016, Plaintiff Jason Martin filed this class action lawsuit against Defendants Medicredit, Portsmouth and Wentworth-Douglass Hospital[1] for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff contends Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii)[2] "by causing an automatic telephone dialing system and/or

---

[1] Plaintiff and Defendant Wentworth-Douglass Hospital stipulated to the dismissal of Plaintiff's claims against Wentworth-Douglass Hospital [ECF No. 29].

[2] The TCPA, 47 U.S.C. § 227(b)(1), provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . .

1

[an] artificial or prerecorded voice to be used to make nonemergency telephone calls to Plaintiff and other members of the Class without their prior express consent."

Specifically, Plaintiff argues Defendant Portsmouth Regional Hospital ("Portsmouth") assigned its delinquent accounts to debt-collector Medicredit. Plaintiff alleges Medicredit placed robocalls to Plaintiff's cellular telephone number regarding a debt allegedly owed to Portsmouth by someone other than Plaintiff. Plaintiff claims he did not provide Defendants with his cellular telephone number. Plaintiff alleges these pre-recorded calls expressly stated they were made "on behalf of Portsmouth Regional Hospital" and continued despite repeated requests from Plaintiff to cease calling. Plaintiff alleges Portsmouth is directly and vicariously liable for calls made by Medicredit.

Plaintiff further seeks to represent a nationwide class of individuals to whose cellular telephone number Medicredit placed a non-emergency call on and after July 14, 2015, through the use of any automatic telephone dialing system ("ATDS") or artificial or prerecorded voice-- where the person's number was obtained from a source other than the person himself. Plaintiff also set forth a subclass of individuals who owed or allegedly owed a debt to Defendant Portsmouth. Plaintiff requests the Court issue an order certifying the action as a class action pursuant to Fed. R. Civ. P. 23, "establishing the appropriate Classes" and "finding Plaintiff is a proper representative of the Classes." Plaintiff seeks statutory damages and injunctive relief under the TCPA from both Medicredit and Portsmouth.

As noted above, this action was commenced on July 13, 2016. Three months earlier, on April 1, 2016, a putative class action entitled *Rajesh Verma, an individual, on behalf of himself*

---

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

*and all others similarly situated v. Medicredit, Inc. et al.*, Case No. 3:16-cv-427-J-25JRK ("*Verma*"), was filed in in the United States District Court for the Middle District of Florida. In *Verma*, the plaintiff alleged TCPA violations against the defendants Memorial Healthcare Group, Inc. ("Memorial"), and two debt collectors, NPAS, Inc. and Medicredit, Inc. Plaintiff claims the Memorial hired NPAS and Medicredit to place debt-collection calls to him regarding a debt allegedly owed to Memorial. The plaintiff stated he did not owe any money to Memorial, never provided his cellular number to defendants or granted consent to call it, and repeatedly told NPAS and Medicredit not to continue to call him.

Plaintiff Verma also seeks to represent a nationwide class of individuals subscribing to a cellular telephone whose number appears in the Medicredit and NPAS's records in association with an ATDS or a pre-recorded message and artificial voice message. The proposed *Verma* class includes individuals called between April 11, 2012, and the date of certification. In its answer, Medicredit opposed certification and argued the suit was not properly brought as a class action. It is undisputed by the parties that the proposed class in *Verma* has not yet been certified.

In the instant action, Defendant Portsmouth now moves the Court to dismiss Plaintiff's claims against Portsmouth pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 22]. Also pending before the Court is Defendants Portsmouth and Medicredit's Motion to Stay these proceedings [ECF No. 24]. Defendants argue that the "first-to-file" rule mandates a stay of this action pending resolution of the *Verma* action. For the reasons stated below, this Court will deny Portsmouth's Motion to Dismiss and Defendants' Motion to Stay.

## II. DISCUSSION

### A. Portsmouth's Motion to Dismiss

Defendant Portsmouth argues Plaintiff has failed to state a plausible claim for relief pursuant to FRCP 12(b)(6). Specifically, Portsmouth contends Plaintiff has failed to allege facts to establish Portsmouth was directly or vicariously liable for Medicredit's violations of the TCPA.

To survive a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. As the United States Supreme Court recently reiterated in *Iqbal,* "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly. Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Under this standard, the task of a court is "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (citing *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible")). "This is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).

In support of its Motion, Portsmouth argues Plaintiff failed to plead Portsmouth was directly liable for violations of the TCPA because Plaintiff did not allege Portsmouth made the calls at issue. Portsmouth contends the "express language of the TCPA makes clear that in order

4

for there to be liability, a defendant must have physically placed the offending call." However, as noted by Plaintiff, the Federal Communications Commission ("FCC") has ruled that a creditor is responsible for calls made on its behalf by a third-party debt collector. In *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 10 & N.38 (Jan. 4, 2008) ("2008 TCPA Order"), the FCC stated:

> "[A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call . . . . A third party collector may also be liable for a violation of the Commission's rules."

The language of the 2008 TCPA Order appears to impose direct liability, not only on the third-party debt collector, but also on creditors who farm their debts out to third-party debt collectors. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. Ill. 2012) ("calls placed by a third-party collector on behalf of a creditor are treated as having been made by the creditor itself."); *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. Ohio 2016); *O'Connor v. Diversified Consultants, Inc.*, No. 4:11CV1722 RWS, 2013 WL 2319342, *4 (E.D. Mo. May 28, 2013); *Martin v. Cellco Partnership*, No. 12-C-5147, 2012 WL 5048854, *2 (N.D. Ill. Oct. 18, 2012).

In the Complaint, Plaintiff has asserted the following facts: Portsmouth assigned its delinquent accounts to Medicredit for debt collection. Plaintiff began receiving calls in January 2016 from Medicredit regarding debts owed to Portsmouth by someone other than himself. Many of the pre-recorded calls expressly stated they were made on behalf of Portsmouth.

Plaintiff has pled sufficient facts against Portsmouth to state a claim for relief. Pursuant to the 2008 TCPA Order, a creditor could be held liable for violations of the TCPA as if it had made the calls itself. *See O'Connor*, 2013 WL 2319342 at *4 (calls placed by a third party

5

collector on behalf of a creditor are treated as if the creditor itself placed the call). *See also Aghdasi v. Mercury Ins. Grp., Inc.,* No. CV 15-4030R, 2015 WL 5638086, at *2 (C.D. Cal. Aug. 18, 2015). As noted above, Plaintiff has alleged the debt collection calls were made by Medicredit on Portsmouth's behalf pursuant to its policy of farming out its delinquent accounts to Medicredit. Thus, the Court finds Plaintiff's pleadings are sufficient and the Motion to Dismiss will be denied.

**B. Motion to Stay**

Defendants have filed a Motion to Stay in this matter pending the resolution of *Verma*, a putative class action alleging TCPA violations filed three months before Plaintiff filed this action ("*Martin*"). Defendants rely on the "first-to-file" rule in support of their Motion.

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. Am. Airlines, Inc.,* 989 F.2d 1002, 1006 (8th Cir. 1993); *Arnold v. DirecTV, Inc.*, No. 4:10CV00352AGF, 2011 WL 839636, at *4 (E.D. Mo. Mar. 7, 2011). The rule "is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice." *Nw. Airlines*, 989 F.2d at 1005 (citation omitted). The prevailing standard is that "in the absence of compelling circumstances the first-filed rule should apply." *Id.* (citation omitted). However, district courts enjoy wide discretion in applying the first-filed rule. *Id.* at 1004.

Application of the first-filed rule requires "parallel litigation" to be pending in two different courts. *Furminator, Inc. v. Munchkin, Inc.*, No. 4:08CV000367ERW, 2009 WL 2957952, at *1 (E.D. Mo. Sept. 10, 2009). Generally, two cases are considered to be "parallel" when they involve essentially identical or substantially similar parties and issues. *Id.* at *1.

Upon review of the record, the relevant case law and arguments of the parties, this Court declines to apply the "first-to-file" rule to stay the present case. As noted, the litigation pending in the two courts must be "parallel." Here, the two cases do not constitute parallel litigation. Most significantly, the parties in *Verma* and *Martin* are not substantially similar. First, as Plaintiff correctly suggests, there is a lack of identity among the defendants in the two actions. Defendant Portsmouth is not a party to the *Verma* action and two defendants in *Verma*, creditor Memorial and debt-collector NPAS, are not parties in *Martin*. *See Miller v. Directv, LLC*, No. 3:15CV390JPDB, 2016 WL 816611 at * 3 (M.D. Fla. Mar. 2, 2016) (noting the plaintiff in the second action had only sued one of the four defendants present in the first action and concluding one overlapping party and one potential overlapping issue were insufficient to apply the first-filed rule).

In addition, the named plaintiffs are not the same in *Verma* and *Martin*. Defendants argue this is insignificant as the proper focus of the inquiry is whether the putative classes in both cases are substantially similar. *See e.g.*, *Askin v. Quaker Oats Co.*, No. 11CV111, 2012 WL 517491, at *4 (N.D. Ill. Feb. 15, 2012). However, looking at the putative class described in *Verma* and the class descriptions set forth here, in *Martin*, the Court discerns significant differences.

In *Verma*, the putative class[3] is defined as follows:

- A nationwide class of individuals subscribing to a cellular telephone;
- Whose cellular number appears in the defendants' collection records or auto dialing records in association with an automated telephone dialing system or a pre-recorded message or artificial voice message; and
- Where those records reflect calls to that cell phone in the period starting four years prior to the filing of the suit[4] through the date of certification.

In *Martin*, the proposed class is set forth as:

---

[3] Specifically, two classes were set forth in the complaint (an "Autodialer Class" and a "Prerecorded Message and Artificial Voice Class"). The definitions have been combined above to avoid repetition.

[4] According to Defendants, the *Verma* suit was filed on April 11, 2016.

7

> All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing, system or artificial or prerecorded voice (6) where such person's number was obtained from a source other than the person himself.

[ECF No. 1]. After defining the proposed class, Plaintiff then sets forth a definition of individuals who revoked their consent to be called. Plaintiff's "proposed revocation" includes: "All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing, system or artificial or prerecorded voice (6) after such person informed Medicredit to stop calling." [ECF No. 1]. The Complaint also details the following proposed subclass of individuals ("Portsmouth subclass"):

> All persons within the United States (2) to whose cellular telephone number (3) Medicredit placed a non-emergency telephone call (4) between July 14, 2015 and the date of certification, (5) through the use of any automatic telephone dialing system or artificial or prerecorded voice (6) in an attempt to collect a debt owed or allegedly owed to Portsmouth Regional (7) where such person's number was obtained from a source other than the person himself or after such person informed Medicredit to stop calling.

[ECF No. 1].

The class descriptions do overlap in part as both involve a nationwide class of individuals whole cellular numbers were called through the use of an ATDS or artificial or prerecorded voice. Nevertheless, there are several distinctions between the two putative classes. Here, in *Martin*, the class description states that the person's cellular number was obtained from a source other than the person and it includes a definition of revocation. In contrast, the *Verma* class does not address 1) from whom the cellular number was obtained, or 2) revocation. Moreover, the putative class description in *Martin* includes a subclass of individuals called by Medicredit in an attempt to collect a debt owed or allegedly owed to Portsmouth. There are no subclasses in

8

*Verna*. Finally, the class in *Verma* is broader as it includes calls made by more than one defendant[5] and spans a greater time period than *Martin*.

Based upon the presence of different defendants and significant disparities in the definitions of the putative classes, this the court concludes the parties in *Verma* and *Martin* are dissimilar. Moreover, the Court finds the issues in the case do not sufficiently overlap. To constitute parallel actions, a determination in one action should leave little or nothing to be determined in the other. *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007); *Leyse v. Bank of Am.*, No. CV1107128SDWSCM, 2016 WL 5928683, at *7 (D.N.J. Oct. 11, 2016). Here, Plaintiff's claims against Defendant Portsmouth will go unresolved by *Verma*. *See Leyse*, 2016 WL 5928683, at *7 (stating that the first-filed rule was inapplicable because a resolution in the first-filed matter did not necessarily "leave[ ] little or nothing to be determined in the [second].")

Moreover, the Court finds there are additional reasons to exercise our discretion to decline to apply the "first-to-file" rule. Specifically, it is undisputed by the parties that in *Verna* the putative class has not yet been certified. At the time Defendants filed their Motion to Stay, the plaintiff in Verna had not yet even filed its motion for class certification with the court in Florida. Thus, this case is not advanced much further than the instant action. Moreover, Defendant Medicredit has taken inconsistent positions regarding the viability of the proposed class certification in *Verna*. Specifically, Medicredit assumes for purposes of its motion here that a class will be certified in *Verna*, yet in *Verna*, it opposes class certification in its answer to the plaintiff's complaint. Coupled with the early stage of the *Verna* proceedings, Defendants' opposing stances on whether a class will be certified in *Verna* militates against application of the

---

[5] In *Verna*, the class description refers to "defendants," which includes NPAS and Medicredit. In *Martin*, only Medicredit is named in the class description as making calls.

"first-to-file" rule. *See Feggins v. LVNV Funding, LLC*, No. 14-1049, 2014 WL 7185376, at *2-3 (Bankr. M.D. Ala. Dec. 16, 2014).

Having determined this suit is not duplicative of the *Verma* action and that the first-to-file doctrine does not apply, the Court declines to stay this action pending resolution of *Verma*. Defendants' Motion to Stay will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Portsmouth Regional Hospital's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [ECF No. 22] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Medicredit Inc. and Portsmouth Regional Hospital's Motion to Stay These Proceedings [ECF No. 24] is **DENIED.**

Dated this 15th day of November, 2016.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**