# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARILYNN MARTINEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICREDIT, INC., et al., <br><br> Defendants. | Consolidated Case <br><br> No. 4:16CV01138 ERW |
| TODD HORNBERGER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICREDIT, INC., <br><br> Defendant. | |
| RAJESH VERMA, et al. <br><br> Plaintiff, <br><br> v. <br><br> MEMORIAL HEALTHCARE GROUP, INC., et al <br><br> Defendants. | No. 4:17CV02809 ERW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS**

**Introduction**

Marilynn Martinez, Todd Hornberger, Eric Johnson, and Rajesh Verma (collectively "Class Representatives") alleged that Medicredit, Inc. and NPAS, Inc. (collectively, "Defendants") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, through their debt collection calls to consumers throughout the United States. After hard-fought litigation spanning nearly two years in multiple courts, the parties ultimately reached an agreement to resolve this matter that will provide meaningful cash benefits to the participating class members.

In accordance with the Court's preliminary approval order, ECF No. 95, the claims administrator distributed, via direct mail, notice of the settlement to nearly 500,000 members of the settlement class. The notice detailed the terms of the settlement, including the amount of the attorneys' fee award and the incentive award that the class representatives and their counsel would seek. Separately, notice to the governmental agencies was sent as required under the Class Action Fairness Act ("CAFA"). As of the time of filing this motion, no one has objected to the settlement.

Given the great result reached for the class,[1] and in light of the positive reaction from class members, Class Representatives and their counsel now seek an award of attorneys' fees of one-third of the common fund plus reimbursement of their costs and expenses in the amount of $30,967.55, and an incentive award in the amount of $7,500 for each Class Representative.

**Argument**

**I. An award of one third of the common fund is fair and reasonable.**

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

---

[1] As the class representatives will detail in their motion for final approval, the settlement here compares extremely favorably to other class action settlements under the TCPA.

Class Counsel seek an award of attorneys' fees equal to one-third of the $5 million fund. Class Counsel's request is supported by applicable case law both within, and outside of, the Eighth Circuit, and with respect to class actions generally and those under the TCPA specifically.

**A. The Eighth Circuit utilizes the percentage-of-the-benefit method to calculate attorneys' fees awards in common fund cases like this one.**

In common fund cases like this "[i]t is well established in [the Eighth] Circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 at 1157 (8th Cir. 1999); *accord In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("We have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement such as this…."). "Indeed, 'where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees.'" *Barfield v. Sho-Me Power Elec. Coop.*, 2015 U.S. Dist. LEXIS 70166, at *9 (W.D. Mo. June 1, 2015); *West v. PSS World Medical, Inc.*, No. 4:13-CV-574 CDP, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) ("where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method" is the preferred method to determine an appropriate award of attorneys' fees.)

The Eighth Circuit based this preference on the well-documented deficiencies in the lodestar process, as it explained in *Johnston v. Comerica Mortg. Corp.*:

> First, calculation of the lodestar increases the workload of an already over-taxed judicial system. Second, the elements of the lodestar process are insufficiently objective and produce results that are far from homogenous. Third, the lodestar process creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law. Fourth, the lodestar is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount. Fifth, although designed to curb certain abuses, the lodestar approach has led to others. Sixth, the lodestar creates a disincentive for the early settlement of cases. The report

2

>   in this area added '... there appears to be a conscious, or perhaps, unconscious, desire to keep the litigation alive despite a reasonable prospect of settlement, to maximize the number of hours to be included in computing the lodestar.' Seventh, the lodestar does not provide the district court with enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered. Eighth, the lodestar process works to the particular disadvantage of the public interest bar. Ninth, despite the apparent simplicity of the lodestar formulation, considerable confusion and lack of predictability remain in its administration.

83 F.3d 241, 245 n.8 (8th Cir. 1996) (citing *Court Awarded Attorney Fees*, 108 F.R.D. at 246-49).

> **B. An award of attorneys' fees of one-third of the common fund is in line with awards of attorneys' fees in class actions in this circuit.**

The Eighth Circuit "has not established a 'benchmark' percentage that the court should presume to be reasonable in a common fund case." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 n.7 (D. Minn. 2005). However, "courts in this circuit… have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *See id*. at 998 (citing cases); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035 (affirming district court's award of 36% of the common settlement fund as attorneys' fees); *In re Aquila ERISA Litigation*, 2007 WL 4244994 (W.D. Mo. 2007) (court awarded 33%); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (awarding fees of one-third of common fund, plus separate reimbursement of litigation expenses); *Lees v. Anthem Ins. Cos., Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding 34 percent of common fund as attorneys' fees in TCPA class action); *Barfield v. Sho-Me Power Elec. Co-op.*, No. 2:11-cv-4321NKL, 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015) (awarding fees of one-third of common fund); *In re Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litig.*, Civil Action No. 4:04-md-1907-ERW, ECF No. 355 (E.D. Mo. Feb. 26, 2013) (Webber, J.) (awarding fees equal to one-third of common fund, plus separate reimbursement of expenses); *Sanderson v. Unilever Supply Chain, Inc.*, 2011 U.S. Dist. LEXIS 145794, at *4 (W.D. Mo. Dec. 19, 2011) (court awarded 33.78) *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C

3

10-4038-MWB, 2011 U.S. Dist. LEXIS 130180, at *18 (N.D. Iowa Nov. 9, 2011) (awarding attorneys 36.04% of $18.5 million common fund in fees, [*13] plus separate reimbursement from settlement fund of over $900,000 in expenses); *West v. PSS World Med., Inc.*, No. 4:13 CV 574 CDP, 2014 U.S. Dist. LEXIS 57150, at *4 (E.D. Mo. Apr. 24, 2014) ("In this case, the court believes that 33 percent is a reasonable percentage for attorney's fees. It is appropriate to apply a reasonable percentage to the gross settlement fund."); *Wiles v Southwestern Bill Tel. Co*, 2011 U.S. Dist. LEXIS 64163, 2011 WL 2416291, at *10-11 (W.D. Mo. June 9, 2011) (awarding attorneys one-third of $900,000 common fund); *Ray v. Lundstrom*, No. 8:10CV199, 2012 U.S. Dist. LEXIS 160089, at *11-12 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million fund in fees, plus separate reimbursement from the settlement fund of $77,900 in expenses); *Brehm v. Engle*, No. 8:07CV254, 2011 U.S. Dist. LEXIS 35127, at *6 (D. Neb. Mar. 30, 2011) (awarding one-third of $340,000 settlement fund in fees, plus separate reimbursement from the fund of $45,000 in expenses); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (S.D. Iowa 2011) (awarding 33% of the settlement award in fees); *In re Iowa Ready–Mix Concrete Antitrust Litig.*, No. C 10–4038–MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) (awarding fees of 36.04% of $18.5 million common fund, plus separate reimbursement from settlement fund of over $900,000 in expenses);[2]

---

[2] *See also West*, 2014 WL 1648741, at *1 ("In this case, the court believes that 33 percent is a reasonable percentage for attorney's fees. It is appropriate to apply a reasonable percentage to the gross settlement fund."); *Wiles v. Southwestern Bill Telephone Co.*, No. 09-4236-CV-C-NKL, 2011 WL 2416291, at *10–11 (W.D. Mo. June 9, 2011) (awarding one-third of common fund in attorneys' fees); *Ray v. Lundstrom*, No. 8:10CV199, 4:10CV3177, 8:10CV332, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) (awarding one-third of fund in fees, plus separate reimbursement of $77,900 in expenses); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (S.D. Iowa 2011) (awarding 33% of the settlement award in fees); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061, 1067–68 (D. Minn. 2010) (awarding one-third of $16 million settlement fund, plus separate reimbursement from the fund of $245,000 in expenses); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (awarding class counsel one-third of $86 million settlement fund).

4

*Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061, 1067-68 (D. Minn. 2010) (awarding one-third of $16 million settlement fund, plus separate reimbursement from the fund of $245,000 in expenses).

In light of the foregoing precedent, Class Counsel's requested fee award of one-third of the common fund is reasonable and should be approved.

### C. An award of attorneys' fees of one-third of the common fund is consistent with awards of attorneys' fees in similar TCPA class actions.

In the TCPA class action context, the customary fee—one-third of the economic benefit bestowed on the class—is supported by a significant amount of empirical evidence. For instance, the Northern District of Illinois recently performed an in-depth analysis of the risks associated with TCPA litigation to determine proper awards of attorneys' fees in TCPA class action settlements. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 805-807 (N.D. Ill. Feb. 12, 2015) (Holderman, J.).

In assessing the risks associated with TCPA class actions, Judge Holderman explained:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. First, it was quite possible that the discovery may have revealed that many class members acquiesced to receiving calls on their cell phones when they agreed to their cardholder agreements with Capital One. Some customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls on their cell phone from Capital One. Second, at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement given that Capital One would have to review its records to determine which class members provided consent through cardholder agreements, which class members actually provided their cell phone numbers to Capital One, and whether each class member actually owned their cell phone number at the time Capital One called it using an autodialer. Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs

5

would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

*Id*. at 805.[3]

After analyzing these serious risks inherent with TCPA litigation, Judge Holderman determined that an appropriate risk-adjusted fee for TCPA class settlements is an award of 36 percent of the common fund—up to the first $10 million in recovery. *Id*. at 807. Because the one-third of the settlement fund sought here is less than the risk-adjusted fee found to be appropriate when determining awards of attorneys' fees in TCPA class action settlements under $10 million, Class Counsel's request is reasonable and should be approved. *See Lees*, 2015 WL 3645208, at *4 (Limbaugh, Jr., J.) (awarding 34 percent of common fund as attorneys' fees in TCPA class settlement).Indeed, this Court, in a recent TCPA class action settlement, awarded one-third of the common fund in attorneys' fees, plus the reimbursement of litigation costs and expenses. *See Prater v. Medicredit, Inc.*, No. 4:14CV00159 ERW, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (Webber, J.). This Court should do the same here.

**D. The *Johnson* factors strongly support a fee award of one-third of the fund.**

Although the Eighth Circuit has not established fee-evaluation factors, it has approved consideration of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719–20 (5th Cir. 1974). *See Barfield*, 2015 WL 3460346, at *5. The *Johnson* factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] Of note, at the time the Class Representatives negotiated the settlement here, they faced all of the risks outlined by Judge Holderman in *Capital One*.

*Id.* (citing *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007) (citing *Johnson*, 488 F.2d at 717–19)).

"All twelve Johnson factors seldom apply in each case, and courts exercise their discretion in selecting factors for review in a particular case. *See Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999) ("[I]t is not necessary for district courts to examine exhaustively and explicitly . . . all the factors that are relevant to the amount of a fee award."); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1082 (D. Minn. 2009). In any event, each of these factors support the requested fee in this case.  Here, the *Johnson* factors overwhelmingly support an award of attorneys' fees equal to one-third of the common fund.

### 1. The time and labor required to resolve this matter were significant.

As outlined in the Declarations of Class Counsels (Declarations of Keith J. Keogh, Scott Owens, Robert Murphy, Michael Greenwald, and Eric Kem attached hereto as *Exhibits 1-5*), Class Counsel have spent nearly two years litigating these cases.  A short summary is as follows: On April 16, 2016, Rajesh Verma filed a complaint in the United States District Court for the Middle District of Florida, 3:16-CV-00427-HLA-JRK, alleging that Defendants violated the TCPA by making prerecorded calls to cell phones without the prior express consent of Verma or the putative class members. See *Exhibit 1, Declaration of Keith Keogh* at ¶3.

On July 13, 2016, Jason Martin filed a complaint in the United States District Court for the Eastern District of Missouri alleging that Medicredit, Inc. violated the TCPA by making prerecorded calls to cell phones without the prior express consent of Martin or the putative class members.  Mr. Martin subsequently dismissed his claims. *Id.* at ¶4.

On February 3, 2017, Mr. Hornberger (and later, Mr. Johnson) filed a putative class action against Medicredit, Inc. in the Eastern District of Missouri alleging that Medicredit violated the

7

TCPA by making prerecorded calls to cell phones without the prior express consent of plaintiffs or the putative class members. *Id.* at ¶5.

On March 6, 2017, the parties attended a mediation at JAMS in Chicago, Illinois before the Honorable Morton Denlow (Ret.) that resulted in an impasse. *Id.* at ¶6.

On July 24, 2017, Plaintiffs Martinez, Hornberger, and Johnson filed a Consolidated Class Action Complaint in the United States District Court for the Eastern District of Missouri alleging that Medicredit violated the TCPA by making prerecorded calls to cell phones without the prior express consent of Plaintiffs or the putative class members.

The parties conducted discovery in these cases, including depositions of the corporate designees of the respective Defendants in St. Louis, Missouri, expert discovery in *Verma* that entailed depositions of Plaintiffs' expert in San Diego, California and depositions of Defendants' two experts in Chicago, Illinois and Seattle, Washington, respectively. *Id.* at ¶8.

The parties vigorously litigated this matter through the close of discovery. The issues in this case were complex, including, *inter alia*, whether Defendants utilized an ATDS as defined by the TCPA, the ascertainability of the Class, whether Class Members consented to the calls they received from Defendants, the interrelationship of the Defendants, the propriety of class certification, the effect of FCC rulings and potential rulings, and the measure of damages available to Class Members. Accordingly, class counsel conducted extensive fact and expert discovery, and also spent significant time and effort on motion practice and issues related to the propriety of class certification. *Id.* at ¶9.

The parties continued to discuss resolution and attended a second mediation at JAMS in Philadelphia before the Honorable Diane M. Welsh (Ret.) on September 15, 2017 that resulted in this settlement. The settlement resolves this litigation on a nationwide basis. *Id.* at ¶10.

8

As part of that Agreement, Verma filed a motion to transfer his action to this Court in order to have one Court oversee this nationwide settlement. On December 4, 2017, *Verma* was assigned to this Court. *See* No. 17CV02809 ERW at Dkt. 82.

Because this action required a substantial investment of time and resources over a nearly two-year time period, the requested attorneys' fee award is reasonable and should be approved.

### 2. The ultimate class-related question underlying this matter was both novel and difficult.

At the time of the inception of this matter, there did not exist, as far as Class Representatives' counsel is aware, a single decision through which a district court certified, over a defendant's objection, a "wrong number" TCPA class action—one arising from a defendant's efforts to contact someone other than the intended recipient. Since Class Representatives filed their cases, several district courts have certified wrong number TCPA class actions, while others have refused to do so. Given this, the class-related question underlying this matter—whether this Court should certify Class Representatives' proposed TCPA class—was both novel and difficult. And as a result, the risk that Class Representatives' counsel assumed in litigating this matter was significant, particularly because the TCPA does not include a fee-shifting provision.

### 3. Class Representatives' counsel relied on particular skill and experience to properly perform the legal services required.

Where "Class Counsel's knowledge and experience . . . significantly contributed to a fair and reasonable settlement, this factor supports a request for a large amount of attorneys' fees." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012) (internal quotation omitted). Here, Class Representatives' counsel's knowledge of, and experience with, TCPA class actions, *see infra*, Argument, Section I.D.7, helped to bring about the common fund established in this matter.

9

For example, Keith J. Keogh has substantial experience in TCPA class actions. He has been class counsel in some of the largest TCPA settlements in the country. *See Hageman v. AT&T Mobility LLC*, et al., Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation, et al.*, 12-cv-10064 (N.D. Ill.) Holderman, J.) (Liaison Counsel and additional Class Counsel) (Final Approval Granted February 12, 2015 for a $75 million settlement). In 2015, the National Association of Consumer Advocates honored Mr. Keogh as the Consumer Attorney of the Year for his work in courts and with the FCC insuring the safeguards of the TCPA were maintained.

Similarly, multiple district courts have commented on Mr. Greenwald's knowledge and experience. For example, in *Ritchie v. Van Ru Credit Corp.*, Judge Stephen M. McNamee stated upon approving a TCPA class action settlement and appointing Class Representatives' counsel class counsel:

> I want to thank all of you. It's been a pleasure. I hope that you will come back and see us at some time in the future. And if you don't, I have a lot of cases I would like to assign you, because you've been immensely helpful both to your clients and to the Court. And that's important. So I want to thank you all very much.

Case No, CIV-12-1714 (D. Ariz. July 21, 2014), attached as Exhibit A to the Declaration of Michael Greenwald. Attorney Murphy has been involved in numerous consumer cases involving violations of the federal and state consumer protection laws in both state and federal court, including the following reported decisions: *Picchi v. World Financial Network Bank,* 2015 WL 1201396 (S.D. Fla. 2015) (nationwide settlement class under Telephone Consumer Protection Act involving $7.8 million settlement fund); *Q+ Food LLC v. Mitsubishi Fuso Trucks of America, Inc.*,

2016 WL 7213278 (D. N.J. Oct. 26, 2016) (nationwide settlement class of commercial truck owners for breach of warranty[4]).

### 4. Acceptance of this matter precluded Class Representatives' counsel from taking on other employment.

Each of Class Representatives' counsels are a relatively small firm. *See Exhibits 1-5*. The amount of work that Class Representatives' counsel can handle at any given time is accordingly limited. Class Counsel's efforts in connection with, and commitment to, this matter, consequently curtailed an ability to accept other work.

### 5. A customary fee in a common fund case is approximately one-third of the economic benefit bestowed on the class.

As noted above, the requested fee is consistent with fees awarded in class actions in the Eighth Circuit generally, as well as with respect to TCPA class actions in particular. *See supra*, Argument, Section I.B-C. The requested fee is also less than the judicially endorsed "risk-adjusted fee structure" for TCPA class actions. *See In re Capital One*, 80 F. Supp. 3d at 807. As a result, this factor supports the reasonableness of the requested fee.

### 6. Class Representatives and their counsel entered into a contingent attorneys' fee agreements.

Class Representatives entered into contingent attorneys' fee agreements with their counsel. The agreements permitted Class Counsel to apply to this Court for an award of attorneys' fees in

---

[4] Additional examples include *Smith v. Toyota Motor Credit*, 2013 WL 1325460 (D. Md. March 28, 2013) (class action involving over 2,600 class members who failed to receive adequate post-repossession notices under Maryland law); *Singleton v. General Revenue Corp.*, 2013 WL 15118 (S.D. Fla. 2013) (nationwide settlement class certified under Fair Debt Collection Practices Act with over 150,000 class members); *Whitaker v. Navy Federal Credit Union*, 2010 WL 3928616 (D. Md. 2010) (final approval of nationwide Article 9 class providing more than $50 million in debt relief); *Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir.2005) (landmark odometer act decision); *Cannon v. Metro Ford*, 242 F. Supp. 2d 1322 (S.D. Fla. 2002) (auto fraud/truth in lending); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003) [truth in lending class action]; *Jackson v. Southern Auto Finance Co.*, 988 So.2d 721 (Fla.4th DCA 2008); *Muro v. Hermano's Auto Wholesalers, Inc.*, 514 F. Supp. 2d 1343 (S.D. Fla. 2007); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004) (class certification in FDCPA action).

the event that a common fund was established for the benefit of the class.  Of note, the agreements provided a range that Class Representatives' counsel would seek between 33% to 35% of the common fund as compensation for work performed in connection with this matter. *See Exhibits 1-5* (Declarations of Keogh ¶22, Owens ¶27, Murphy ¶11, Greenwald  ¶41,  and Eric Kem ¶29).

That the attorneys' fee arrangements in this case were contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012).

### 7. Class Counsel are experienced and have a good reputation.

Class Counsel have extensive experience litigating class actions filed under federal consumer protection statutes.  In addition to this action, Class Representatives' counsel have been appointed class counsel in scores of consumer protection class actions. *See Exhibits 1-5*.  Class Counsel's experience further supports the reasonableness of the requested fee.

### E. The universal support for Class Counsel's fee request further demonstrates its reasonableness.

Although the deadline to object has yet to pass, as of the filing of this motion,  not a single class member has objected even though the notice specifically explained that Class Representatives' counsel would seek an award of attorneys' fees equal to one-third of the common fund plus expenses. *See* Doc. 93-1 at 51-25.  The absence of any valid objections strongly indicates that an attorneys' fee award equal to one-third of the common fund is fair and reasonable. *See Cox v. Sprint Commc'ns Co. L.P.*, No. 6:10-CV-01262-KGG, 2012 WL 5512381, at *4 (D. Kan. Nov. 14, 2012) ("The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

12

**II. Class Representatives' unopposed request for incentive awards in the amount of $7,500 each is fair, reasonable, and supported by law.**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "[i]ncentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit," and noting that "[n]umerous courts have authorized incentive awards"). These awards "serve an important function in promoting class action settlements." *Sheppard v. Cons. Edison Co. of N.Y., Inc.*, No. 94-CV-0403(JG), 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002).

Similarly, without the Class Representatives, the class would not have recovered anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *5 ("I find that each named plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members. The requested incentive award for each named plaintiff recognizes this commitment and the benefits secured for other class members, and is thus reasonable under the circumstances of this case.").

As well, Class Representatives spent considerable time pursuing class members' claims. In particular, Class Representatives frequently communicated with counsel keeping apprised of this matter, participated in the discovery process, including producing documents and answering interrogatories, and Ms. Verma was deposed.

Given all of the foregoing, the requested incentive award of $7,500 is fair and reasonable. In fact, Circuit Judge Paul Kelly, Jr., sitting by designation, approved an incentive award of $20,000 to a TCPA plaintiff in *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14–cv–00130–PJK–GBW, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015); *Krueger*, 2015 WL 4246879, at *3 (approving $25,000 incentive awards for each named plaintiff); *See, e.g.*, *Lees v. Anthem Ins. Cos.*, 2015 U.S.

Dist. LEXIS 74902, *10-11 (E.D. Mo. 2015) (citing cases and approving service award of $10,000 for named Plaintiff); and appropriate")[5]

Moreover, this Court, in *Prater*, approved an incentive award of $20,000 to the named plaintiff. *Prater*, 2015 WL 8331602, at *3 (Webber, J.) ("John Prater will receive the sum of $20,000 as acknowledgment of his role in prosecuting this case on behalf of the Class Members."). Accordingly, incentive awards of $7,500 each are fair and reasonable.

### III. Class Representatives' counsel's request for an award of costs is justified.

"It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses." *Krueger*, 2015 WL 4246879, at *3 (citing *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066–67 (E.D. Mo. 2002)).

Here, Class Representatives' counsel seek the reimbursement of $30,967.55 in reasonable costs and expenses in connection with this matter. *See Exhibits 1-5* (Declarations of Keogh ¶23, Owens ¶26, Murphy ¶33, Greenwald ¶45 and Eric Kem ¶30). Importantly, the categories of expenses for which Class Representatives' counsel seeks reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See Krueger*, 2015 WL4246879, at *3 (approving reimbursement for depositions,

---

*Ritchie v. Van Ru Credit Corp.*, No. 2:12–CV–01714–PHX–SM, 2014 WL 3955268, at *5 (D. Ariz. Aug. 13, 2014) ("Plaintiff will receive a $12,000 incentive award"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) ("the Court finds that an award of $20,000 is well justified"); *In re Aquila ERISA Litig.*, No. 04-00865-CV-DW, 2007 WL 4244994, at *3 (W.D. Mo. Nov. 29, 2007) (awarding incentive awards between $5,000 and $25,000 for named plaintiffs who "rendered valuable service to the Plan and all Plan Participants. Without this participation, there would have been no case and no settlement."); *In re Ins. Brokerage Antitrust Litig.*, MDL 1663, 2007 WL 1652303 (D.N.J. June 5, 2007) (awarding $10,000 to each of the fifteen named plaintiffs), *aff'd*, 579 F.3d 241 (3d Cir. 2009); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (providing the class representative a $50,000 service award); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (awarding $215,000 to several class representatives).

14

experts and consultants, transcripts and filing fees, mediation, copies, telephone and fax, data development, research and investigation, and travel, and noting that "[g]iven that Class Counsel represented Plaintiffs on a contingent-fee basis, they had a strong incentive to keep these expenses at a reasonable level.").

## Conclusion

Class Representatives and their counsel respectfully request that this Court grant their applications for (1) an award of attorneys' fees in an amount equal to one-third of the common fund established in this matter, (2) an award of costs and expenses in the amount of $30,967.55, and (3) an incentive award for each Class Representative in the amount of $7,500.

Respectfully Submitted December 5, 2017

By: Keith J. Keogh
Keith J. Keogh, IL 6257811 (Pro Hac Vice)
Timothy Sostrin, IL 6290807
KEOGH LAW, LTD
55 W. Monroe St., Suite 3390
Chicago, IL 60606
(312) 374-3405 (telephone)
(312) 726-1093 (facsimile)
Keith@KeoghLaw.com

Scott D. Owens (pro hac vice)
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
(954) 589-0588 (telephone)
(954) 337-0666 (facsimile)
scott@scottdowens.com

Michael L. Greenwald (pro hac vice)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
(561) 826-5477
(561) 961-5684 (Fax)
mgreenwald@gdrlawfirm.com

ROBERT W. MURPHY
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660 Telephone
rwmurphy@lawfirmmurphy.com

Eric W. Kem, FL 0106042
ERIC W. KEM, P.A.
2233 N.W. 41st Street, Suite 700-H
Gainesville, Florida 32606
(352) 275-7151 (telephone)
(844) 536-3476 (facsimile)
ekem@kemlawfirm.com

Counsel for Plaintiffs and the Class

15

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on February 28, 2018, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: /s/ *Keith J. Keogh*
Keith J. Keogh, IL 6257811